# No. 16-8032

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

JAYVON WRIGHT, ET AL.,

*Plaintiffs-Petitioners*,

v.

CITY OF WILMINGTON,

*Defendant-Respondent*,

Petition to Appeal from the
United States District Court for the District of Delaware
Case No. 1:13-cv-1966-SLR-SRF
The Honorable Sue L. Robinson

**DEFENDANT-RESPONDENT CITY OF WILMINGTON'S
OPPOSITION TO PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(B) AND FRCP 23(F)**

OF COUNSEL:
Michael P. Migliore
Rosamaria Tassone-DiNardo
City of Wilmington Law Department
City/County Building, 9th Floor
800 N. French Street
Wilmington, DE 19801
(302) 576-2175

C. Malcolm Cochran, IV (DE Bar #2377)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

*Counsel for Defendant-Respondent*

Dated:  April 25, 2016

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ......................................................2

FACTS ................................................................................................................3

ARGUMENT ......................................................................................................4

    I.    THE DISTRICT COURT CORRECTLY DENIED CLASS
        CERTIFICATION ................................................................................6

        A.    The Proposed Class is Not Ascertainable ......................................6

        B.    Numerosity is Mere Speculation...................................................10

        C.    The Petitioners Have Not Established Typicality...........................12

        D.    The Petitioners Have Not Established Adequacy. .........................13

        E.    The Proposed Class Does Not Meet the Requirements of
                Fed. R. Civ. P. 23(b)(2) or 23(b)(3). ...............................................14

    II.    THE PETITIONERS ARE NOT ENTITLED TO PRE-
        CERTIFICATION DISCOVERY BECAUSE CLASS
        CERTIFICATION IS UNWARRANTED AS A MATTER OF
        LAW. ...............................................................................................16

CONCLUSION ................................................................................................18

RLF1 14407402v.1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baker v. Monroe Twp.*,
    50 F.3d 1186 (3d Cir. 1995) ...........................................................7

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) ..........................................................13

*Behrend v. Comcast Corp.*,
    245 F.R.D. 195 (E.D. Pa. 2007).....................................................11

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ..........................................................14

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013) ..............................................6, 10, 11

*Herman v. City of Millville*,
    66 F. App'x 363 (3d Cir. 2003) .......................................................8

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2009) ..........................................................11

*Illinois v. Gates*,
    462 U.S. 213 (1983)..........................................................................7

*Marcus v. BMW of North America, LLC*,
    687 F.3d 583 (3d Cir. 2012) ................................................6, 8, 17

*Murphy v. Mifflin Cty. Reg'l Police Dep't*,
    548 F. App'x 778 (3d Cir. 2013) .....................................................8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ....................................................*passim*

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ....................................................12, 13

*Semenko v. Wendy's Int'l, Inc.*,
    No. 2:12-cv-836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013).......16

*Stinson v. City of New York*,
   282 F.R.D. 360 (S.D.N.Y. 2012) ....................................................................8, 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................10, 13, 14

**STATUTES & RULES**

42 U.S.C. § 1988 ...................................................................................................5

Fed. R. Civ. P. 23(a)(1) .......................................................................................10

Fed. R. Civ. P. 23(a)(4) .......................................................................................13

Fed. R. Civ. P. 23(b)(3)........................................................................................16

Fed. R. Civ. P. 23(f) ..............................................................................................2

RLF1 14407402v.1

Respondent City of Wilmington ("City") opposes the Petition for Permission to Appeal under 28 U.S.C. § 1292(b) and FRCP 23 ("Petition"), as follows:

## **INTRODUCTION**

The Petitioners' (collectively "Mr. Wright" or "Petitioners") request for permission to appeal the District Court's denial of class certification is without merit and should be denied.  The Wilmington Police Department ("WPD") has not "admitted the fundamentals" of "an unconstitutional pattern and practice" (and there is not one).  Rather,  Mr. Wright and four other individual plaintiffs complain that they were "handcuffed, transported, searched, and imprisoned . . . based solely upon reasonable suspicion."  They seek to certify a class of persons similarly situated.   But the Magistrate Judge,  and then the District Court,  correctly concluded that certification of such a class would require the court to engage in individualized mini-trials to determine, in the case of each putative class member, whether (in fact) he or she was detained based solely on reasonable suspicion, or whether probable cause or some other legal justification existed.  The presence of probable cause would, of course, be an absolute defense in each case, but the inquiry is highly fact specific.  In addition, in each case (for each putative class member), the court would need to determine whether the putative class member was (in fact) "handcuffed," "transported," "searched," and "imprisoned."  Mr. Wright and his co-plaintiffs assert that there are thousands of such persons,

threatening to mire the court in thousands of mini-trials to determine who does, and does not, belong in the class.

The lower court correctly determined (*inter alia*) that, in this circumstance, the "ascertainability" element—an essential element for class certification—cannot be met.  The court thus declined to certify the class, leaving the five plaintiffs to pursue their individual claims under 42 U.S.C. § 1983.

This Court has discretion to permit an appeal from an order granting or denying class certification.  Fed. R. Civ. P. 23(f); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 163 (3d Cir. 2001).  The District Court correctly decided that class certification is unwarranted as a matter of law, and its decision is not dispositive of the case.  The Court should exercise its discretion to deny the Petitioners' request for permission to appeal.

## NATURE AND STAGE OF PROCEEDINGS

The Petitioners initiated this case by filing a complaint on November 23, 2013.  On the same date, the Petitioners also moved to certify a class and served pre-certification discovery on the City.  The City moved to dismiss the complaint, opposed class certification, and moved for a protective order as to the pre-certification discovery.  The Petitioners cross-moved to compel responses to the discovery requests.

RLF1 14407402v.1

After the completion of briefing on the City's motion to dismiss, the Petitioners moved to amend their complaint to (*inter alia*) add new class representatives. The City opposed the amendment as futile for the same reasons set forth in support of its motion to dismiss.

On January 28, 2016, the Magistrate Judge issued a report and recommendation ("Report and Recommendation"), recommending that the District Court deny the motion for class certification, grant the motion to amend, and deny as moot the motion to dismiss, the motion for protective order, and the cross-motion to compel. Report and Recommendation at 1 (attached hereto as Exhibit A). The City and the Petitioners each objected to various portions of the Report and Recommendation.

The District Court adopted the Report and Recommendation by Memorandum Order on March 31, 2016. (Exhibit A to Petition). The instant Petition was docketed with this Court on April 13, 2016.

## FACTS

The Amended Complaint alleges that the City has adopted a "policy and custom of … handcuff[ing], transport[ing], search[ing], and imprison[ing] individuals based solely upon reasonable suspicion." (Amended Complaint ¶ 138). The Petitioners sought certification of a class consisting of "[a]ll persons who have been handcuffed, transported, search, and imprisoned by Wilmington Police

3

Department based only upon reasonable suspicion of a crime." (Amended Complaint ¶ 10).

The Petitioners contend that logs maintained by WPD, so called "turnkey logs," identify members of the class by noting "n/a" in the "charge(s)" column or by noting "ID" in the "disposition" column. (Petition at 2). The Petitioners allege that "n/a" indicates that the individual was never charged with a crime while the designation "ID" stands for "investigatory detention." (*Id.*). The Petitioners thus assert that members of the class are ascertainable from the turnkey logs. (*Id.* at 8). Notably, the turnkey logs at issue do not contain any indication whether probable cause or reasonable suspicion existed nor do they define "ID." The Amended Complaint does not allege otherwise.

## ARGUMENT

This Court has "'discretion [to] permit an appeal from an order of a district court granting or denying class action certification.'" *Newton*, 259 F.3d at 163 (quoting Fed. R. Civ. P. 23(f)). The Court may grant or deny a petition for permission to appeal "on the basis of any consideration that the court of appeals finds persuasive." *Id.* at 165. Not all class certification decisions "necessitate interlocutory appeal." *Id.* (quotations and citation omitted). Thus, this Court has stated that granting permission to appeal may be appropriate "to address: (1) the possible case-ending effect of an imprudent class certification decision . . .; (2) an

4

erroneous ruling; or (3) facilitate development of the law on class certification." *Id.*

The instant Petition meets none of these standards. This Court reviews decisions denying class certification for abuse of discretion. *Id.* (citing *In re LifeUSA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001)). The District Court did not abuse its discretion when it correctly decided that class certification is unwarranted as a matter of law. Because the Petitioners' proposed class fails as a matter of law, the District Court also correctly determined that pre-certification discovery is not warranted. Moreover, the District Court's denial of class certification is not dispositive of the outcome of this case. The individual plaintiffs' claims can still be pursued. The Petitioners contend that "the denial of certification likely terminates some claims because the cost of litigation precludes all claims from being pursued." (Petition at 5). But this action is brought pursuant to 42 U.S.C. § 1983, which provides for the recovery of attorneys' fees and litigation expenses if the Petitioners' individual claims are meritorious. *See* 42 U.S.C. § 1988.[1]

---

[1] Indeed, the Petitioners seek all attorneys' fees and costs pursuant to 42 U.S.C. § 1988 in their Amended Complaint.

## I.     THE DISTRICT COURT CORRECTLY DENIED CLASS CERTIFICATION

### A.     The Proposed Class is Not Ascertainable

The District Court correctly decided that the class is not ascertainable. "[A]scertainability entails two important elements. First, the class must be defined with reference to objective criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (internal citations omitted). Thus, where the members of the class cannot be identified "without extensive and individualized fact-finding or 'mini-trials' . . . [class certification] is inappropriate." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

Here, the class cannot be defined "with reference to objective criteria" and there is no "reliable and administratively feasible mechanism for determining" class membership. *Hayes*, 725 F.3d at 355. The Petitioners' proposed class would include all persons who have been handcuffed, transported, searched, and imprisoned by the Wilmington Police Department based only upon reasonable suspicion of a crime. (Amended Complaint ¶ 10).

The Petitioners contend that the turnkey logs provide a "reliable and administratively feasible mechanism" for determining membership in the class. (Petition at 6-7). The turnkey logs, however, do not objectively identify persons

who were "handcuff[ed], transport[ed], search[ed], *and* [imprison[ed]."  At most, they identify persons against whom charges had not been filed (or for whom charge information was not available) at the time of the entry on the log.

Even assuming *arguendo* the turnkey logs identify potential class members (they do not), "mini-trials" will be required to determine whether any individual identified on the log is, in fact, a member of the class.  After the District Court determines that an individual has been "handcuffed, transported, searched, and imprisoned," the District Court would then have to determine on a case by case basis whether (i) the imprisonment, search, handcuffing, and transport were supported by "probable cause," and (ii) if not supported by "probable cause," whether the police conduct otherwise properly fell within the bounds of the law. The necessary judicial inquiries would thus be highly fact specific and would turn, in each case, on the unique facts and circumstances presented by the underlying incident.  *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.").

For example, there is "no per se rule" that handcuffing and/or transporting a suspect to the police station converts an investigatory detention into an arrest without probable cause.  *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (stating that there is "no per se rule" that handcuffing a suspect constitutes

7

an arrest but noting that the use of handcuffs "must be justified by the circumstances"); *see also  Murphy v. Mifflin Cty. Reg'l Police Dep't*, 548 F. App'x 778, 781 (3d Cir. 2013) ("[T]he use of handcuffs does not necessarily transform an investigatory seizure into a formal arrest requiring probable cause.").  In addition, whether charges were filed is not dispositive of whether an officer had probable cause at the time of the detention.  *See, e.g.*, *Herman v. City of Millville*, 66 F. App'x 363, 367 (3d Cir. 2003) ("The investigating officer is not in the business of weighing facts and credibility; that is the domain of the court.").

This kind of extensive and individualized fact finding is exactly what the ascertainability element is intended to preclude.[2]  *Marcus*, 687 F.3d at 593 ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.").  The District Court, therefore, correctly determined that class certification is unwarranted as a matter of law.

The Petitioners cite to *Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012) as a decision where a court found that a proposed class challenging a pattern and practice of the police department was ascertainable.

---

[2] Indeed, even under the Petitioners' proposed method of identifying class members, one of the named plaintiffs could not be identified based on the turnkey logs.  As alleged in the Amended Complaint, Jayvon Wright was arrested and charged with loitering and disorderly conduct and, presumably, the turnkey logs reflect such charges.  Moreover, the fact that charges were brought against Mr. Wright suggests that he was detained on more than reasonable suspicion.

8

*Stinson* involved a challenge to the NYPD's alleged "pattern and practice of issuing summonses to individuals without probable cause." *Id.* at 363. The plaintiffs in *Stinson* alleged that the NYPD instructed its officers "to issue summonses regardless of whether any crime or violation has occurred in order to meet a minimum quota requirement set forth by the NYPD." *Id.* The plaintiffs proposed a class that would include "all persons who have been or will be issued a summons in the absence of probable cause for offenses that were never committed and whose summonses were ultimately dismissed prior to trial." *Id.* at 374 (quotations omitted). The court, however, narrowed the plaintiffs' proposed class to include only "individuals who were issued summonses that were later dismissed upon a judicial finding of facial insufficiency and who were ticketed without probable cause" and found that such class would be ascertainable. *Id.* at 377.

*Stinson* is distinguishable from the present case. In *Stinson*, the class was limited to those individuals whose summonses had been reviewed by a judicial fact finder and a judicial determination had been made that the particular summons had been issued without probable cause. *See id.* Indeed, the court in *Stinson* specifically noted that "[m]erely being issued a ticket that was later dismissed is not, by itself, considered tantamount to having been ticketed without probable cause." *Id.*

9

The Petitioners in this case seek to certify a class of individuals who were handcuffed, transported, searched, and imprisoned by Wilmington Police Department based only upon reasonable suspicion of a crime. The turnkey logs include information relating to all detainees, regardless of whether charges were ultimately filed or the individuals convicted. The fact that an individual may have been detained by the Wilmington Police Department and not charged with a crime is not equivalent to a judicial finding that probable cause did not exist at the time of the detention. Unlike in *Stinson*, there has been no judicial determination of a lack of probable cause as it relates to the Petitioners' proposed class in this action. Accordingly, the proposed class is not ascertainable, and the District Court correctly denied class certification.

### B.    Numerosity is Mere Speculation.

Numerosity requires a finding that the putative "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Newton*, 259 F.3d at 168. "A party seeking class certification must . . . be prepared to prove that there are *in fact* sufficiently numerous parties . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). "Mere speculation as to the number of class members—even if such speculation is 'a bet worth making'— cannot support a finding of numerosity." *Hayes*, 725 F.3d at 357.

The Petitioners seek certification of a class based on only three specific incidents as alleged in the Amended Complaint, involving a total of five individuals. This Court generally has approved classes of forty or more. *See, e.g.*, *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007). This Court has held that "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone." *Hayes*, 725 F.3d at 358. "Similarly, the trial court cannot take a wait-and-see approach to numerosity or any other requirement of Rule 23." *Id.* While the Petitioners apparently hope that discovery (and, presumably, myriad mini-trials) will identify numerous "members" of their putative class, the trial court must "consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2009). "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Id.* at 318.

In any event, pre-certification discovery would be futile for at least two reasons. First, as discussed above, the logs Plaintiffs contend will assist them in identifying class members do not provide information sufficient to identify class members and, therefore, would not provide a basis for this Court or the District Court to hold that the numerosity requirement is met. Second, as the District Court held, the Petitioners have not established that the proposed class will meet any of

11

the requirements of Fed. R. Civ. P. 23(b).  Accordingly, the Petitioners failed to

establish numerosity, and District Court correctly denied class certification.

### C.    The Petitioners Have Not Established Typicality.

In assessing typicality, this Court considers the following elements:

> (1) the claims of the class representative must be generally the same
> as those of the class in terms of both (a) the legal theory advanced and
> (b) the factual circumstances underlying that theory; (2) the class
> representative must not be subject to a defense that is both
> inapplicable to many members of the class and likely to become a
> major focus of the litigation; and (3) the interests and incentives of the
> representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).  The

presence of an "arguable defense peculiar to the named plaintiff or a small subset

of the plaintiff class may destroy the required typicality of the class . . . ."  *Id.* at

598-99 (quoting *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th

Cir. 1980)).

The Petitioners cannot establish typicality because the claims of each

putative class member would be based on unique, distinct factual circumstances.

Moreover, whether probable cause or other justification was present would require

separate and individualized fact finding under the unique circumstance presented

in each case.   No showing can be made sufficient to characterize as

"representative" any injury suffered by the named Plaintiffs where factors such as

the length of detention, the nature and extent of any physical injury, or other

special damages would require individualized proof  and judicial determination in each and every case.  *See Wal-Mart Stores*, 564 U.S. at 366-67.  Unlike in *Stinson*, probable cause (or lack thereof) has not already been judicially determined.  The Petitioners, thus, have failed to establish typicality.

### D.    The Petitioners Have Not Established Adequacy.

Under Rule 23(a), the class representative(s) must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry is divided into two parts:  "(1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class."  *Newton*, 259 F.3d at 185.

Mr. Wright fails to qualify for the proposed class because he was ultimately arrested and charged with loitering and disorderly conduct.  Moreover, the proposed Amended Complaint does not allege any facts regarding the reasons for detaining Messrs. Murrey, Medley, Griffin, or El nor does the Amended Complaint allege that probable cause was absent.  "Because of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 602 ("There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and

13

this second part of the adequacy inquiry that focuses on possible conflicts of interest.").  Here, each plaintiff's claim would be subject to unique defenses, based on the unique facts associated with each detention, whether probable cause was present or absent on such facts, or whether the facts presented other legal justifications.  Accordingly, the District Court correctly denied class certification.

### E. The Proposed Class Does Not Meet the Requirements of Fed. R. Civ. P. 23(b)(2) or 23(b)(3).

Even assuming the Petitioners have met the requirements of Rule 23(a), the District Court correctly determined that the proposed class fails to meet the requirements of either Rule 23(b)(2) or 23(b)(3).  "The 'disparate factual circumstances of class members' may prevent a class from being cohesive and, therefore, make the class unable to be certified under Rule 23(b)(2)."  *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011).  Further, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Wal-Mart Stores*, 564 U.S. at 360-61.  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"  *Id.* at 360.

In the proposed Amended Complaint, the Petitioners seek "[a] judgment against Defendant . . . awarding damages to Plaintiffs and each Member of the

Proposed Class in an amount to be determined by a jury and/or the Court on both an individual and a Class-wide basis." (Amended Complaint, Prayer for Relief). The Petitioners also seek a declaratory judgment declaring defendants' policy, custom, and practice unconstitutional and an injunction enjoining Defendant from perpetuating an unconstitutional policy and custom. (*Id.*). The Petitioners also seek "[a]ll lawful damages, including compensatory damages in an amount to be determined, against Defendant" as well as attorneys' fees and costs. (*Id.*).

In adopting the Report and Recommendation, the District Court correctly determined that the "requested money damages are not incidental to the injunctive and declaratory relief sought." (Exhibit A at 14). To determine each class member's monetary damages, the Court would be required to conduct individualized fact finding concerning the circumstances of the class member's detention. Injunctive or declaratory relief would also be unique to the individual factual scenarios adduced at trial. The Petitioners' proposed class does not meet the requirements of Fed. R. Civ. P. 23(b)(2), and the District Court correctly denied class certification.

Rule 23(b)(3) permits class certification where, in addition to the 23(a) requirements:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

As discussed, the present case requires individualized findings of factual circumstances and legal justifications concerning each detention. Such individualized analysis precludes class certification.

The Petitioners' proposed class does not meet the requirements of Rule 23(b). Accordingly, the District Court correctly denied class certification.

## II. THE PETITIONERS ARE NOT ENTITLED TO PRE-CERTIFICATION DISCOVERY BECAUSE CLASS CERTIFICATION IS UNWARRANTED AS A MATTER OF LAW.

The District Court correctly denied the motion to compel because no amount of discovery can establish that the proposed class action can be maintained. The District Court has broad discretion to limit pre-certification discovery and may deny class certification before discovery where "'no amount of additional class discovery will alter the conclusion' that the class is not maintainable." *Semenko v. Wendy's Int'l, Inc.*, No. 2:12-cv-836, 2013 WL 1568407, at *2 (W.D. Pa. Apr. 12,

16

2013) (quoting *Thompson v. Merck & Co., Inc.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004)).

For the reasons set forth herein, class certification is unwarranted as a matter of law.  The ascertainability element cannot be met because "mini-trials" would be required for each proposed member of the class to determine whether probable cause (or some other justification) existed to justify the "handcuffing, transporting, searching, and imprison[ment]" of purported class members.  *Marcus*, 687 F.3d at 593 ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials," then a class action is inappropriate.").  No amount of discovery can cure this defect.  Other essential elements of class certification are not satisfied, including numerosity, typicality, and adequacy.  Neither Rules 23(b)(2) nor 23(b)(3) are satisfied.  Accordingly, the District Court correctly denied the motion to compel.

17

## CONCLUSION

For the foregoing reasons, the Petition should be denied.

/s/ *C. Malcolm Cochran, IV*

OF COUNSEL:                                    C. Malcolm Cochran, IV (DE Bar #2377)
Michael P. Migliore                            Cochran@rlf.com
Rosamaria Tassone-DiNardo                      Richards, Layton & Finger, P.A.
City of Wilmington Law Department              One Rodney Square
City/County Building, 9th Floor              920 N. King Street
800 N. French Street                           Wilmington, Delaware 19801
Wilmington, DE 19801                           302-651-7700
(302) 576-2175

                                               *Counsel for Defendant-Respondent*

Dated:  April 25, 2016

RLF1 14407402v.1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

JAYVON WRIGHT, ANTOINE MURREY,)
KEITH MEDLEY, GREGORY GRIFFIN, )
and RASHAD EL, )
                        )
       Plaintiffs,        )
                        )
    v.                )     Civil Action No. 13-1966-SLR-SRF
                        )
CITY OF WILMINGTON,      )
                        )
       Defendant.       )

### REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Presently before the court in this in this civil rights action, brought under 42 U.S.C. §
1983, are the following motions: (1) a motion to certify class filed by plaintiffs Keith Medley
("Medley"), Antoine Murrey ("Murrey"), and Jayvon Wright ("Wright") (collectively,
"plaintiffs")[1] (D.I. 3); (2) a motion to dismiss for failure to state a claim pursuant to Federal Rule
of Civil Procedure 12(b)(6) filed by the City of Wilmington (the "City" or "defendant") (D.I.
10); (3) defendant's motion for a protective order (D.I. 15); (4) plaintiffs' motion to compel (D.I.
17); and (5) plaintiffs' motion to amend the complaint and add members of the proposed class
(D.I. 30).  For the following reasons, I recommend that the court deny plaintiffs' motion to
certify class, deny as moot defendant's motion to dismiss, deny as moot defendant's motion for a
protective order, deny as moot plaintiffs' motion to compel, and grant plaintiffs' motion to
amend.

---

[1] Plaintiffs seek to include additional plaintiffs as class representatives by way of their proposed
amended complaint. (D.I. 30 at ¶ 5)  For the reasons discussed at § III.A, *infra*, I recommend
that the court deny plaintiffs' request to add Gregory Griffin ("Griffin") and Rashad El ("El") as
class representatives.  For the reasons discussed at § III.B.2, *infra*, I recommend that Griffin and
El be added as plaintiffs in the present case.

## II.    BACKGROUND[2]

Plaintiffs initiated this civil rights action under 42 U.S.C. § 1983 on November 21, 2013,

alleging that pursuant to policy and custom, the City handcuffs, transports, searches and

imprisons individuals based on reasonable suspicion rather than probable cause in violation of

the United States Constitution and relevant federal and state law. (D.I. 30, Ex. A at ¶ 27)

Specifically, plaintiffs' proposed amended complaint alleges three separate instances of

constitutional violations by police officers involving five named plaintiffs. (*Id.* at ¶¶ 47-127)

The first instance occurred on November 23, 2011, when Wright allegedly observed

Officer Devon Jones ("Jones"), a member of the Wilmington Police Department ("WPD"),

performing a search of Wright's friend Eduardo Griffin ("Eduardo") over the hood of a police

vehicle. (*Id.* at ¶ 47) Wright walked toward the search, stopped eight to ten feet away from

Eduardo and Jones, and asked Eduardo if he needed Wright to call Eduardo's parents for him.

(*Id.* at ¶ 48) Jones responded, "What the [expletive] do you want, shouldn't you be playing

basketball." (*Id.* at ¶ 49) After Wright turned to walk away, Jones allegedly grabbed his arm,

tackled him to the ground, and proceeded to assault Wright for three to five minutes. (*Id.* at ¶¶

50-51) Wright asked Jones what he was doing, but Jones did not respond to Wright or to his

mother and uncle standing nearby. (*Id.* at ¶¶ 52-54)

Following the assault, Jones handcuffed Wright, searched his pockets, placed him in the

back of a police car, and transported him to a police station. (*Id.* at ¶¶ 58-61) During the course

of these events, Jones never informed Wright that he was under arrest, or identified the crime he

was suspected of committing. (*Id.* at ¶ 60) Wright claims that after he arrived at the station,

---

[2] For purposes of the motion to amend the complaint, the facts alleged in plaintiffs' proposed amended complaint will be taken as true.

2

officers handcuffed him to a bench and performed an inventory search of his personal effects. (*Id.* at ¶ 62) After being moved into a jail cell, Wright's handcuffs were removed and he was told he was being charged with resisting arrest. (*Id.* at ¶¶ 63-64) No one questioned Wright in the cell, and he was released approximately two hours later. (*Id.* at ¶¶ 65-66) Wright was charged with loitering and disorderly conduct, but both charges were dismissed prior to trial and Wright was not charged with resisting arrest. (*Id.* at ¶¶ 67-69)

The second incident occurred on or about March 15, 2013, when plaintiffs Medley and Murrey were confronted by WPD officers with guns drawn as they left an apartment complex. (*Id.* at ¶¶ 71-73) The officers instructed both Medley and Murrey to get down on the ground, and the men responded by lying face down on the pavement. (*Id.* at ¶¶ 74-75) The officers handcuffed Medley and Murrey, patted them down for weapons, and searched their persons. (*Id.* at ¶¶ 77-78) One of the officers removed Murrey's car keys from his pocket, and drove and searched the vehicle. (*Id.* at ¶¶ 80-82)

The officers then asked Medley and Murrey which apartment unit they had come from, and brought the men back into an apartment in the complex. (*Id.* at ¶¶ 83-85) The officers escorted Murrey to a bedroom, removed his handcuffs, and compelled him to remove his clothing before searching his mouth and between his buttocks. (*Id.* at ¶¶ 86-87, 90-91) The officers then instructed Murrey to re-dress, handcuffed him again, and returned him to the apartment's living room. (*Id.* at ¶¶ 92-94) Murrey alleges that one officer held a Taser several inches from him during this process, and that the Taser would be deployed if he moved. (*Id.* at ¶¶ 88-89)

The officers subsequently brought Medley to the bedroom, removed his handcuffs, and compelled him to remove all of his clothing before searching his mouth and between his

3

buttocks. (*Id.* at ¶¶ 95-97, 100-102) After the search, the officers instructed Medley to re-dress, handcuffed him again, and returned him to the apartment's living room. (*Id.* at ¶¶ 102-103) Medley alleges that one officer held a Taser during this process, and he was told that the Taser would be deployed if he moved. (*Id.* at ¶¶ 98-99)

The officers then searched the apartment unit, and seized a cell phone and a pair of bolt cutters. (*Id.* at ¶¶ 104, 106) No officer showed Medley or Murrey a search warrant for the apartment or any other location. (*Id.* at ¶ 105) Medley and Murrey were transported to a police station, placed in a cell for approximately one hour, and were subsequently released with no charges filed. (*Id.* at ¶¶ 108-10) The officers did not inform Medley or Murrey why they had been detained. (*Id.* at ¶ 111)

The third incident occurred on February 3, 2013, when four WPD police officers, including Officer Andrew Schaub, asked proposed plaintiffs Gregory Griffin and Rashad El if they had seen which way certain unidentified people fled near the intersection of Lobdell Street and Chapel Street in Wilmington.[3] (*Id.* at ¶¶ 113-114) Griffin responded, "I don't know, I didn't see anything." (*Id.* at ¶ 115) The officers took Griffin and El into custody without explanation, handcuffed them and placed them into a police vehicle. (*Id.* at ¶¶ 116-118) The officers transported Griffin and El to a police station, where they were handcuffed to a bench. (*Id.* at ¶¶ 119-122, 124) The officers searched Griffin's body until a commanding officer interrupted them and apologized to Griffin. (*Id.* at ¶ 123) The officers also searched El's body. (*Id.* at ¶ 125) Neither Griffin nor El was told why they were taken into custody, and neither was charged with a crime. (*Id.* at ¶¶ 126-127)

---

[3] Plaintiffs' motion to amend the complaint includes averments as to two additional plaintiffs, Griffin and El, which the court will accept as true for the purposes of deciding the motion to amend.

4

Plaintiffs' proposed amended complaint alleges that the WPD maintains a written policy permitting an individual to be taken into custody, handcuffed, transported to the police station, and held for no more than two hours based on reasonable suspicion. (*Id.* at ¶ 29) Under the WPD's investigatory detention policy, it is normal procedure to handcuff persons suspected of a crime and transport them to a police station based only on reasonable suspicion. (*Id.* at ¶ 31)

Plaintiffs also rely on the WPD's Directive 6.10(K) (the "Directive") in the proposed amended complaint to establish a factual basis for their allegations that the WPD maintains an unconstitutional written policy of detaining, transporting, and searching individuals based only on reasonable suspicion. (*Id.* at ¶¶ 37) The Directive allegedly authorizes officers to exceed the scope of 11 *Del. C.* § 1902, and assumes many individuals will be detained without probable cause. (*Id.* at ¶ 32) According to plaintiffs' proposed amended complaint, the WPD maintains a Turnkey Prisoner Log ("turnkey log") containing easily identifiable records of individuals detained pursuant to the Directive. (*Id.* at ¶¶ 38-43)

## III.    DISCUSSION

### A.    Motion for Class Certification

Plaintiffs move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the class as follows:

> All persons who have been handcuffed, transported, searched, and imprisoned by Wilmington Police Department based only upon reasonable suspicion of a crime during a period lasting from November 22, 2011 to the date on which the WPD is enjoined from enforcing its policy and custom of unlawfully handcuffing, transporting, searching, and imprisoning citizens based only upon reasonable suspicion, in contravention of the Constitution, the laws of the United States, and the laws of Delaware. Specifically excluded from the class are Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees or assignees.

(D.I. 3 at 1)

5

Pursuant to Federal Rule of Civil Procedure 23(a), the court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to these four requirements, the Third Circuit has adopted an ascertainability requirement, which is generally considered as a "preliminary matter" before turning to the explicit requirements of Rule 23. *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013) (characterizing class ascertainability as "an essential prerequisite of a class action."); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015). To plead ascertainability, (1) "the class must be defined with reference to objective criteria;" and (2) "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012)). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593.

A class may only be certified if all four elements of Rule 23(a) are met and at least one part of Rule 23(b) is met. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008). Plaintiffs seek certification under both Rule 23(b)(2) and Rule 23(b)(3). (D.I. 3 at ¶¶ 10-11, 14) A Rule 23(b)(2) class is one in which "final injunctive or . . . declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) sets forth two additional requirements for class certification: (1) common questions must predominate over questions affecting only individual members; and (2) class resolution must be superior to

other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P.

23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

### 1.    Ascertainability

In support of the motion to certify class, plaintiffs argue that a review of WPD incident

reports over a period of two years is a feasible and economical way to ascertain the class without

extensive or individualized fact finding.  (D.I. 3 at ¶ 16; D.I. 18 at ¶ 23)  In response, defendant

alleges that the proposed class in the present matter is not ascertainable because the court would

need to conduct individual inquiries regarding each police detention involving individuals who

were handcuffed, transported, searched, and imprisoned by the WPD, and whether those actions

were based on reasonable suspicion or probable cause.  (D.I. 12 at ¶¶ 11-12)

Plaintiffs have failed to establish the ascertainability of the class in the present matter.  To

ascertain members of plaintiffs' proposed class, the court would have to engage in individualized

fact-finding and "mini-trials" in contravention of Third Circuit precedent.  *See Carrera v. Bayer

Corp.*, 727 F.3d 300, 305 (3d Cir. 2013).  Sifting through the WPD's records to determine which

individuals were detained under the circumstances identified in plaintiffs' proposed class, and

then determining whether each of those individuals was detained based on reasonable suspicion

or probable cause, is precisely the kind of inquiry the Third Circuit has held is inappropriate.

### 2.    Numerosity

Numerosity requires a finding that the putative "class is so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Newton v. Merrill Lynch, Pierce,

Fenner & Smith, Inc.*, 259 F.3d 154, 168 (2001).  "No single magic number exists satisfying the

numerosity requirement," but the Third Circuit generally has approved classes of forty or more.

*Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007); *Stewart v. Abraham*, 275 F.3d

220, 226-27 (3d Cir. 2001). Other relevant factors in the numerosity inquiry include the "ease of

identifying members and determining addresses, the ease of service on members if joined,

geographical dispersion and whether proposed members of the class would be able to pursue

remedies on an individual basis." *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149

F.R.D. 65, 74 (D.N.J. 1993).

Plaintiffs contend that this action satisfies the numerosity requirement under Rule 23(a)

because the potential number of class members and their dispersed geographical locations render

joinder impracticable, and plaintiffs have shown sufficient circumstantial evidence for the court

to rely on common sense in certifying the class. (D.I. 3 at ¶¶ 2-4)  In the alternative, plaintiffs

request precertification discovery. (D.I. 18 at ¶ 4)  In response, defendant argues that plaintiffs'

allegations do not demonstrate a pattern of conduct, and plaintiffs' ability to identify only three

potential class members and two alleged incidents[4] at this stage in the litigation suggests that

they will be unable to justify class certification. (D.I. 12 at ¶¶ 16-19)

The five plaintiffs[5] identified in the amended complaint are not sufficient in number to

warrant class certification.  The turnkey log and other evidence referenced by plaintiffs may

supply the identities of additional class members sufficient to meet the numerosity requirement,

and the Third Circuit encourages the district court to conduct a "rigorous analysis" of the

evidence and arguments that "resolve[s] all factual or legal disputes relevant to class

certification." *Marcus,* 687 F.3d at 591 (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552

F.3d 305, 316, 307 (3d Cir. 2009)).  However, precertification discovery would be futile in this

---

[4] As defendant's answering brief on the motion to certify class was filed prior to plaintiffs'
motion to amend the complaint, it does not address the third incident alleged by plaintiffs
regarding Griffin and El.
[5] For purposes of the court's class certification analysis, the court will consider the allegations in
the proposed amended complaint regarding Griffin and El.

case because it cannot remove the obstacles to class certification under Rule 23(b), discussed at §

III.A.6 & 7, *infra*. *See* Fed. R. Civ. P. 23(d)(1)(D); *Thompson v. Merck & Co., Inc.*, 2004 WL

62710, at *2 (E.D. Pa. Jan. 6, 2004) (stating that a court may order class allegations to be

stricken where "no amount of additional class discovery will alter the conclusion that the class is

not maintainable.").

### 3.    Commonality

In support of their motion to certify class, plaintiffs contend that this case presents only

one common question of law regarding whether the WPD policy and custom of handcuffing,

transporting, searching and imprisoning individuals based only upon reasonable suspicion is

constitutional. (D.I. 3 at ¶ 5) Plaintiffs suggest that this common question of law can be

resolved by an analysis of common facts relating to purported class members, namely that they

were each subjected to and injured by the alleged policy and custom at issue. (*Id.*) Defendants

respond that issues of fact relating to the existence or absence of probable cause will diverge

between purported class members. (D.I. 12 at ¶¶ 22-23)

Commonality is satisfied when "the named plaintiffs share at least one question of fact or

law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.

1994). "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts

among class members. [E]ven a single common question will do." *Marcus*, 687 F.3d at 597

(internal citations and quotation marks omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual

predicates is sufficient, as is a common core of salient facts coupled with disparate legal

remedies within the class."). The Third Circuit has held that "'class relief is consistent with the

need for case-by-case adjudication,' especially where '[i]t is unlikely that differences in the

factual background of each claim will affect the outcome of the legal issue.'" *Baby Neal*, 43

F.3d at 57 (citing *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

   In the case at bar, plaintiffs have sufficiently established commonality.  Although certain

issues of fact may vary by class member, the same issue of law applies to all potential class

members' claims regarding "whether the WPD policy and custom of handcuff, transport, search,

and imprisonment based solely on reasonable suspicion is Constitutional." (D.I. 3 at ¶ 5)  Thus,

the named plaintiffs "share at least one question of . . . law with the grievances of the prospective

class." *Baby Neal*, 43 F.3d at 56.  The commonality requirement does not require a common set

of identical facts among all class members when a common question of law exists.  *See Marcus*,

687 F.3d at 597.  Defendant's reliance on the Supreme Court's decision in *Wal-Mart Stores, Inc.*

*v. Dukes* is misplaced because the plaintiffs in that case were unable to identify a specific

employment practice that was challenged.  131 S. Ct. 2541, 2555-56 (2011).  In contrast,

plaintiffs in the present action identify a specific policy of handcuffing, transporting, searching,

and imprisoning suspects based on reasonable suspicion.

### 4.     Typicality

   "Typicality . . . derives its independent legal significance from its ability to screen out

class actions in which the legal or factual position of the representatives is markedly different

from that of other members of the class even though common issues of law or fact are present."

*Marcus*, 687 F.3d at 598 (internal quotations omitted).  However, "[c]omplete factual similarity

is not required; just enough factual similarity so that maintaining the class action is reasonably

economical and the interests of the other class members will be fairly and adequately protected

in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

In assessing typicality, courts within the Third Circuit consider the following three factors:

(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough*, 589 F.3d at 599.

In support of their motion to certify class, plaintiffs allege that the typicality requirement is satisfied because any defenses applicable to the class representatives would also apply to members of the class as a whole, and all class members are seeking the same relief. (D.I. 3 at ¶ 8) In response, defendant alleges that questions regarding whether probable cause was present as to each class member would become a major focus of the litigation, noting that the Wright incident resulted in two criminal charges, and plaintiffs fail to allege a lack of probable cause in the Medley and Murrey incident.[6] (D.I. 12 at ¶¶ 28-29) Defendant further contends that individualized proof of damages is required because the requested relief is not limited to declaratory and injunctive relief. (*Id.* at ¶ 30)

Defendant plans to assert a defense of probable cause, but there is insufficient information regarding the other members of the class to determine whether the class as a whole will be subject to defenses applicable to the class representatives. *See In re Schering Plough*, 589 F.3d at 600 ("[N]o conclusion as to [the proposed class representative's] typicality can be reached without knowing more about the composition of the class"). However, a definitive resolution of this inquiry would not remove the obstacles to class certification under Rule 23(b), discussed at § III.A.6 & 7, *infra*. *See* Fed. R. Civ. P. 23(d)(1)(D); *Thompson v. Merck & Co.*,

---

[6] Defendant's response refers to the original complaint, but the court notes that the amended complaint reflects no changes in the factual allegations regarding Medley and Murrey. (D.I. 30, Ex. A at ¶¶ 71-112)

11

*Inc.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (stating that a court may order class

allegations to be stricken where "[n]o amount of additional class discovery will alter th[e]

conclusion" that the class is not maintainable).

### 5.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4).  This analysis requires the court to determine

"(1) whether the representatives' interests conflict with those of the class and (2) whether the

class attorney is capable of representing the class."  *See Newton v. Merrill Lynch, Pierce, Fenner

& Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001).

The adequacy requirement is not met under the facts of the present case due to

foreseeable conflicts between Wright and the proposed class.  Plaintiffs define the proposed class

to include "[a]ll persons who have been handcuffed, transported, searched, and imprisoned by

Wilmington Police Department based only upon reasonable suspicion of a crime." (D.I. 3 at 1)

However, the amended complaint expressly states that Wright "was charged with two

misdemeanors, loitering and disorderly conduct." (D.I. 30, Ex. A at ¶ 67)  On its face, this

allegation distinguishes Wright from the other proposed class representatives and suggests that

he will fall outside the scope of the proposed class.

### 6.    Rule 23(b)(2) requirements

Rule 23(b)(2) is intended for classes where "final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  A

class certified under Rule 23(b)(2) must not primarily seek individualized awards of money

damages. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2560 (2011).  Where, as here, the

putative class seeks injunctive and declaratory relief as well as compensatory damages, the Third

12

Circuit measures the predominance of money damages in the Rule 23(b) context using the "incidental damages" standard set forth by the Fifth Circuit to determine whether the monetary damages are incidental to the injunctive and declaratory relief sought. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 198-99 (3d Cir. 2009). The Supreme Court upheld application of the incidental damages standard, explaining that "incidental damage should not require additional hearings to resolve the disparate merits of each individual's case." *Wal-Mart Stores*, 131 S. Ct. at 2560 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). "[T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief," and should not depend "on the intangible, subjective differences of each class member's circumstances." *See Allison*, 151 F.3d at 415.

Plaintiffs contend that all damages requested in this case meet the requirements of Rule 23(b)(2) because no individualized hearings on damages will be required and no new substantive legal or factual issues will be presented. (D.I. 3 at ¶ 12) Defendant argues that the disparate factual circumstances of each of potentially thousands of investigatory detentions would require individualized injunctive or declaratory relief, and that class certification under Rule 23(b)(2) is inappropriate because each class member would be entitled to an individualized award of money damages upon a showing of liability. (D.I. 12 at ¶ 37-38)

Pursuant to the proposed amended complaint, plaintiffs seek "[a] judgment against Defendant . . . awarding damages to Plaintiffs and each Member of the Proposed Class in an amount to be determined by a jury and/or the Court on both an individual and a Class-wide basis." (D.I. 30, Ex. A at 19, ¶ 2) Plaintiffs also seek a declaratory judgment declaring defendant's policy and custom unconstitutional, and an injunction enjoining defendant from

perpetuating the allegedly unconstitutional policy and custom. (*Id.* at ¶¶ 3-4) However, plaintiffs also expressly seek "[a]ll lawful damages, including compensatory damages in an amount to be determined, against Defendant," as well as attorneys' fees and costs. (*Id.* at ¶¶ 5-6)

The requested money damages are not incidental to the injunctive and declaratory relief sought. Plaintiffs seek compensatory damages, which "necessarily implicate[] the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy." *Allison*, 151 F.3d at 417. Determining each class member's monetary damages will require an individualized analysis of the factual circumstances of his or her detention. Therefore, plaintiffs fail to satisfy the requirements of Rule 23(b)(2).

### 7.    Rule 23(b)(3) requirements

To qualify for class certification under Rule 23(b)(3), "(a) common questions must predominate over any questions affecting only individual members; and (b) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 247 (D. Del. 2002) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). The predominance element of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Teva Pharm. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 227 (D. Del. 2008) (citing *Amchem*, 521 U.S. at 623; *In re Warfarin*, 391 F.3d at 527). The predominance requirement incorporates the commonality requirement, but "predominance is significantly more demanding, requiring more than a common claim." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001). In assessing the superiority factor, the court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Teva Pharm. USA*, 252 F.R.D. at 231 (citing *In*

14

*re Prudential,* 148 F.3d at 316). The primary purpose of certifying cases under Rule 23(b)(3) is

"to vindicate the rights of people who individually would be without the strength to bring their

opponents into court [and] ... overcome[] the problem of small recoveries, which do not provide

enough incentive for individual actions to be prosecuted." *In re Warfarin,* 212 F.R.D. at 247

(citing *Amchem Products,* 521 U.S. at 617).

Plaintiffs argue that common questions of law and fact regarding the constitutionality of

WPD's alleged detention policy predominate over any questions affecting only individual class

members, and pursuing individualized litigation would be impracticable and would increase

delay and expense for both the parties and the court. (D.I. 3 at ¶¶ 14-15) Defendant responds

that individual control of the prosecution of this action would be in the best interest of the

putative class members, and the failure to join other potential claimants may preclude

maintenance of individual claims after settlement or judgment. (D.I. 12 at ¶ 40) Defendant also

contends that plaintiffs have failed to offer a reason that claimants cannot present their claims

individually, and notes that 42 U.S.C. § 1983 actions are routinely filed on an individual basis in

this court. *(Id.)*

The requirements of Rule 23(b)(3) are not satisfied in the present action because the need

for individualized findings of the factual circumstances and relevant legal classifications

surrounding each detention precludes class certification. The predominance requirement cannot

be met when each individual's "claim raises radically different factual and legal issues from

those of other plaintiffs." *Georgine v. Amchem Prods. Inc.,* 83 F.3d 610, 618 (3d Cir. 1996),

*aff'd, Amchem,* 521 U.S. 591. In this case, the factual circumstances of detention vary

significantly even between the five named plaintiffs, and each class member's inclusion would

require an analysis of whether the facts and legal character of the detention comport with

15

plaintiffs' theory, and whether probable cause was present in each individual case. (D.I. 30, Ex. B at ¶¶ 47-127)  Plaintiffs have failed to establish that common questions predominate over concerns affecting only individual class members.

In light of the foregoing analysis, I recommend that the court deny plaintiffs' motion to certify class. Plaintiffs have failed to establish the ascertainability, numerosity, and adequacy factors of the Rule 23(a) analysis.  Further, because a determination of the proper measure of monetary damages for each class member would require individualized analysis of the factual circumstances surrounding detention, certification under Rule 23(b)(2) is improper.  Plaintiffs also do not satisfy the predominance requirement of Rule 23(b)(3), because the legal character of each class member's detention depends on individualized factual circumstances.

### B.    Motion to Amend Pursuant to Rule 15(a)

#### 1.    Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990).  In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). The standard for assessing futility of amendment under Fed. R. Civ. P. 15(a) is the same standard of legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Specifically, the amended pleading must fail to state a claim upon which relief could be granted even after the district court "tak[es] all pleaded allegations as true and view[s] them in a light most favorable to the plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

## 2.    Analysis

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A government policy is established by a "decisionmaker possess[ing] final authority," and a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must: "(1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the 'moving force' behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights." *Holmes v. City of Wilmington*, C.A. No. 13-842-SLR, 2015 WL 467989, at *9 (D. Del. Feb. 4, 2015) (citing *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1997)).

### a.    Policy

Policy is created when a "decisionmaker possess[ing] final authority to establish

municipal policy with respect to the action issues an official proclamation, policy, or edict."

*Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 481 (1986)) (internal quotations omitted). In addition to showing the

existence of a policy,[7] "the plaintiff must also demonstrate that, through its deliberate conduct,

the municipality was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs*, 520

U.S. 397, 404; *see also Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 432 ("The

unconstitutional policy or custom can only be the basis for a *Monell* violation if there is a 'causal

link' between the unconstitutional policy or custom ... and the injury.").

Defendant contends that the proposed amended complaint fails to state a claim on policy

grounds because the Directive is not unconstitutional on its face. (D.I. 31 at 8-9) Moreover,

defendant argues that the proposed amended complaint fails to allege the requisite causal link

between the Directive and the injuries sustained by plaintiffs or the absence of probable cause.

(*Id.* at 11) In response, plaintiffs contend that the Directive supports an unconstitutional policy

because it improperly equates arrests and administrative detentions by assuming that many

suspects will be detained and transported without probable cause under 11 *Del. C.* § 1902. (D.I.

33 at 5-6)

The proposed amended complaint sufficiently alleges a policy in violation of 42 U.S.C. §

1983 because it identifies the Directive as an allegedly unconstitutional policy that caused

plaintiffs' injuries. The amended complaint quotes the portion of the Directive stating that

---

[7] The parties do not dispute the existence of a policy. Therefore, the court will not address this issue.

18

> [m]any people are picked up as suspects in a particular crime. Until they have
> been identified and arrested, we must remember that they are only suspects. The
> majority of such detentions result in the person being released without criminal
> charges being placed. They should not be brought to Central or taken from one
> location to another, then released to find their own means of transportation.
> Officers are to offer to transport them back to the location where they were
> originally stopped and provide them with an explanation of why they were
> detained.

(D.I. 30, Ex. A at ¶ 35) The proposed amended complaint then sets forth plaintiffs'

interpretation of the Directive, stating that the Directive "makes it clear that WPD has a written

policy of detaining, transporting, and imprisoning persons merely suspected of a crime based

solely on reasonable suspicion." (D.I. 30, Ex. A at ¶ 37) The three incidents described by

plaintiffs in the proposed amended complaint, taken as true, support plaintiffs' allegations

regarding the practical application of the Directive because each incident involved the detention

and transportation of individuals without the identification of specific charges. (*Id.* at ¶¶ 47-127)

Viewing plaintiffs' characterization of the Directive's language in conjunction with the facts

surrounding the three incidents set forth in the amended complaint, the court concludes that a

reasonable jury could credit plaintiffs' allegations.

The proposed amended complaint also sufficiently demonstrates a direct causal link

between the Directive and the alleged deprivation of federal rights. Specifically, the amended

complaint states that,

> [p]ursuant to this WPD policy and custom each member of the Class, including
> the named Plaintiffs, were handcuffed, transported, searched, and imprisoned
> based only on reasonable suspicion that they had committed a crime.
>
> As a direct and proximate result of the unlawful policy and custom of WPD
> handcuffing, transporting, searching, and imprisoning individuals based only on
> reasonable suspicion, each member of the class, including the named Plaintiffs –
> has suffered a loss of their liberty, physical injuries, psychological pain,
> humiliation, suffering and mental anguish.

19

(D.I. 30, Ex. A at ¶¶ 45-46) Defendant's contention that an officer's subjective belief of the existence of probable cause constitutes an absolute defense to plaintiffs' allegations is not persuasive in the context of a Rule 15 analysis, as plaintiffs' allegations are deemed true and discovery is required to ascertain the merits of the affirmative defenses.

Defendant alleges that the court should disregard the deposition testimony of Gestwicki and Schifano quoted by plaintiffs in the proposed amended complaint because the testimony is taken out of context. (D.I. 30 at 11) However, at this stage of the proceedings, the facts set forth in the amended complaint must be taken as true. *See Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007). The court cannot properly resolve challenges to the admissibility or characterization of this testimony at the pleadings stage.

### b.    Custom

Customs, as opposed to policies, are "practices of state officials so permanent and well-settled as to virtually constitute law." *Wooleyhan v. Cape Henlopen Sch. Dist.*, C.A. No. 10-153, 2011 WL 4048976, at *4 (D. Del. 2011) (citing *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)). A plaintiff may demonstrate the existence of a custom "by showing the practice is so well-settled and widespread that the policymaking officials have either actual or constructive knowledge of it." *Id.* Although a single incident by a lower level employee acting under color of law cannot establish either an official policy or custom, "if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy and thus to establish the agency's liability." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1983) (citing *Okla. City v. Tuttle*, 471 U.S. 808 (1985)).

Defendant argues that three alleged incidents over a period of eighteen months are insufficient as a matter of law to establish a custom, pattern, or practice pursuant to 42 U.S.C. §

20

1983, especially because the factual allegations regarding the majority of the named plaintiffs do

not support a custom claim under plaintiffs' theory.[8] (D.I. 31 at 14-15)  In response, plaintiffs

contend that the WPD implemented the practice with respect to each of the five named plaintiffs,

and the turnkey log will facilitate identification of other potential class members.  (D.I. 33 at 13-

14)  Moreover, plaintiffs contend that a single application of the alleged custom is sufficient to

establish the existence of an official policy under the facts of this case.  (*Id.*)

   The proposed amended complaint alleges facts that, taken as true, establish the existence

of a custom of handcuffing, transporting, searching, and detaining individuals based only on

reasonable suspicion in violation 42 U.S.C. § 1983.  Allegations regarding the five named

plaintiffs, Gestwicki and Schifano's testimony, and the contents of the turnkey log plausibly

show that the "practice is so well-settled and widespread that the policymaking officials have

either actual or constructive knowledge of it." *Wooleyhan*, 2011 WL 4048976, at *4.

Specifically, the proposed amended complaint states that it is "normal procedure to place persons

suspected of a crime in handcuffs and transport them to the police station based only on

reasonable suspicion" when conducting an investigatory detention.  (D.I. 30, Ex. A at ¶ 31)

Further, plaintiffs allege that in each of the three specific incidents described in the amended

complaint, plaintiffs were detained, searched, brought to a WPD facility, and eventually released.

(D.I. 30, Ex. A at ¶¶ 47-127)  Although Wright was allegedly charged with two misdemeanors

after he was detained, the amended complaint indicates that Medley, Murrey, Griffin, and El

were not charged with any crime, and none of the named plaintiffs were told why they had been

---

[8] Although Griffin and El are not currently class representatives in this action based on the court's disposition of the motion to certify class, the amended complaint names them as plaintiffs, and factual allegations regarding the incident involving Griffin and El may still be properly considered with regard to plaintiffs' § 1983 allegations.

detained initially. (D.I. 30, Ex. A at ¶¶ 67, 110, 111, 126, 127) Finally, the amended complaint

asserts that the turnkey log identifies other individuals who have been transported to and

detained in jail pursuant to an investigatory detention. (D.I. 30, Ex. A at ¶ 39)

Defendant cites *City of Oklahoma v. Tuttle* for the proposition that showing a pattern in a

42 U.S.C. § 1983 claim requires "considerably more proof than a single incident." 471 U.S. 808,

824 (1985). The court in *Tuttle* concluded that "[p]roof of a single incident of unconstitutional

activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes

proof that it was caused by an existing, unconstitutional municipal policy, which policy can be

attributed to a municipal policymaker." *Id.* Defendant's assertion that two incidents are

insufficient as a matter of law to establish a pattern of conduct ignores the proposition that a

single application of a well-settled custom is sufficient if it was done pursuant to official policy.

*Wooleyhan*, 2011 WL 4048976, at *4. Viewed in combination with the factual allegations

regarding the remaining incidents, Gestwicki and Schifano's testimony, and plaintiffs' proposed

interpretation of the turnkey log, plaintiffs have alleged sufficient facts to demonstrate a settled

practice. (D.I. 30, Ex. A at ¶¶ 29, 31, 38-44, 47-127) Alternatively, the amended complaint

sufficiently identifies a custom beyond a single incident by describing the turnkey log and

Gestwicki and Schifano's testimony, both of which suggest that the practice of detaining

suspects based only on reasonable suspicion was well-established. *See Fletcher*, 867 F.2d at

793. At the pleadings stage, plaintiffs have pleaded plausible § 1983 claims.

### c.    Moving force

Plaintiffs have also alleged sufficient facts to show that the municipality is the moving

force behind the alleged injury. A pleading sufficiently alleges the "moving force" requirement

when it establishes that "the municipal action was taken with the requisite degree of culpability

and a causal link exists between the action and the deprivation." *Wooleyhan*, 2011 WL 4048976,

at *4. When a plaintiff claims a municipal practice or custom violates federal law on its face,

"issues of fault and causation are straightforward: proof the authorized decision maker deprived

the plaintiff of a federally protected right necessarily establishes the municipality acted culpably

and that the municipal action was the moving force behind the plaintiff's injury." *Id.* Plaintiffs

allege that they were deprived of federal rights under § 1983 and the Fourth and Fourteenth

Amendments of the United States Constitution as a result of their detention, search, handcuffing,

and transport. (D.I. 30, Ex. A at ¶¶ 38-44, 47-127) Assuming the truth of the amended

complaint's factual allegations regarding the three incidents and the turnkey log, the amended

complaint plausibly alleges that the WPD's custom of handcuffing, searching, transporting, and

imprisoning individuals based on reasonable suspicion resulted in plaintiffs' injuries.

### d.    Failure to train

Defendant contends that the proposed amended complaint fails to specifically identify the

allegedly deficient training, or establish a pattern of constitutional violations sufficient to charge

policymaking officials with knowledge of the need for changes to training. (D.I. 31 at 16) In

response, plaintiffs argue that a reasonable inference may be drawn that the officers were trained

to enforce the unconstitutional policy because defendant admitted to maintaining the

unconstitutional policy. (D.I. 33 at 16) Plaintiffs allege that they need not identify specific

training deficiencies at this stage, as long as the pleaded facts show that the need for more or

different training is apparent and the inadequacy of the current training is likely to result in a

constitutional violation. (*Id.*)

A plaintiff alleges a failure to properly train or supervise employees under 42 U.S.C. §

1983 when "the failure to train amounts to deliberate indifference to the rights of persons with

23

whom the police come into contact." *City of Canton, Ohio v. Harris* 489 U.S. 378, 390 (1989).

To show a failure to train or supervise amounts to deliberate indifference, a plaintiff must

demonstrate that "(1) municipal policymakers know that employees will confront a particular

situation; (2) the situation involves a difficult choice or a history of employees mishandling; and

(3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."

*Carter,* 181 F.3d at 357 (citing *Walker,* 974 F.2d at 297-98)).   A failure to train may amount to

deliberate indifference "where the need for more or different training is obvious, and inadequacy

[is] very likely to result in violation of constitutional rights." *Carter,* 181 F.3d at 357 (citing

*Canton,* 489 U.S. at 389).

    The allegations in the amended complaint, taken as true, sufficiently establish

deficiencies in training amounting to deliberate indifference.  Specifically, the proposed

amended complaint states that defendant "failed to adequately and properly supervise and train

its police officers in various aspects of law enforcement procedure, including but not limited to,

the nature and existence of probable cause, on the constitutional limitations on investigative

stops, detentions, searches and seizures, and on the [l]aws of Delaware."  (D.I. 30, Ex. A at ¶

133)  Although this allegation lacks specific details regarding the training program, "the Third

Circuit has recognized … that a plaintiff cannot be expected to know what training was in place

or how training procedures were adopted without the benefit of discovery." *Arnold v. Minner,*

C.A. No. 04–1346–JJF, 2005 WL 1501514 (D. Del. 2005) (citing *Carter v. City of Phila.,* 181

F.3d 339 (3d Cir. 1999)).  The Third Circuit has determined that a plaintiff may reasonably

surmise that a pattern of misconduct reflects inadequate training and supervision, but the plaintiff

cannot be "expected to know, without discovery, exactly what training policies were in place or

how they were adopted." *Carter,* 181 F.3d at 358.  Allowing discovery on plaintiffs' claim for

24

failure to train is appropriate in the present case to establish the precise nature of the policies. For the foregoing reasons, I recommend that the court grant the motion to amend the complaint as to the policy, custom or practice, and failure to train claims. Plaintiffs may file within thirty days an amended complaint which conforms to the recommendations herein, i.e., denial of certification of class but allowance of individual plaintiffs' § 1983 claims.

### C.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Having recommended that the court grant plaintiffs' motion to amend, I recommend that the court deny defendant's motion to dismiss as moot. Defendant may file an answer or motion in response to the amended complaint in accordance with Rule 12.

### D.    Motion for Protective Order & Motion to Compel

In support of its motion for a protective order, defendant requests that the court preclude discovery until defendant's motion to dismiss and plaintiffs' motion to certify class are resolved. (D.I. 15) In response to defendant's motion for a protective order, plaintiffs filed a motion to compel defendant to produce certain pre-certification discovery. (D.I. 17) In light of the fact that the court recommends denial of the motion to dismiss as moot and denial of the motion to certify class, I recommend that defendant's motion for a protective order and plaintiffs' motion to compel be denied as moot.

## IV.    CONCLUSION

For the reasons discussed above, I recommend that the court deny plaintiffs' motion to certify class (D.I. 3), deny as moot defendant's motion to dismiss (D.I. 10); deny as moot defendant's motion for a protective order (D.I. 15); deny as moot plaintiffs' motion to compel (D.I. 17); and grant plaintiffs' motion to amend (D.I. 30).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss

of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874,

878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available at

http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: January 28 , 2016

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2016, true and correct copies of the foregoing document were served, via e-mail and first class mail, and electronically filed same with the Clerk of the Court using the CM/ECF system:

Stephen P. Norman
The Norman Law Firm
30838 Vines Creek Road, Suite 3
Dagsboro, Delaware 19939

/s/ *C. Malcolm Cochran, IV*
C. Malcolm Cochran, IV (#2377))
Cochran@rlf.com

Dated:  April 25, 2016